UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT EVANS,

    Plaintiff,

    v.   CAUSE NO. 3:23-CV-822-DRL-MGG

BRITTANY WHITE *et al.*,

    Defendants.

## OPINION AND ORDER

Robert Evans, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 15.) Under 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Evans is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

As a preliminary matter, Mr. Evans filed a "Motion to Clarify" (ECF 14), in which he disavows any intention of duplicating the claims he is litigating in another pending lawsuit. *See Evans v. White, et al.*, 3:22-CV-181-PPS-JEM (N.D. Ind. filed Mar. 22, 2022).

Although both lawsuits involve the handling of his mail, he clarifies that the present case involves different incidents and a different time period. This motion will be granted, and the court will ignore any allegations in the amended complaint pertaining to incidents that are the subject of the earlier lawsuit, except to the extent they are relevant to the new claims raised in this case.

Turning to the amended complaint,[1] Mr. Evans is currently an inmate at New Castle Correctional Facility. His claims stem from events occurring when he was incarcerated at Indiana State Prison (ISP). He describes multiple incidents in which Joseph Takacs and Brittany White, internal affairs investigators at ISP, allegedly hampered his ability to receive and send mail and to otherwise communicate with family and friends outside the prison. He claims that on November 27, 2022, Mr. Takacs and Ms. White "censored two phone number[s] from two of the plaintiff's outgoing correspondence," allegedly in retaliation for his "first amendment activities." On four occasions in December 2022 and January 2023, they allegedly "censored" correspondence he was sending to various individuals because they "took issue with what plaintiff stated . . . about them" in the correspondence. Also in December 2022, Mr. Takacs and Ms. White allegedly blocked his brother and father-in-law from his phone list in retaliation for the earlier suit he filed against them. He claims the reason they gave for blocking these

---

[1] The amended complaint is organized in a rather confusing fashion. It contains numbered paragraphs 1-15 in the "Claims and Facts" section of the court's complaint form for prisoner civil rights pages. Following this is the final page of the complaint form, and then an additional handwritten section designated "Claims and Facts" containing four more pages of allegations. These allegations appear to interrelate to Paragraphs 1-15. The court has endeavored to give this filing liberal construction and to discern within it any viable legal claim. *Erickson*, 551 U.S. at 94.

individuals was "pretextual." He further claims that the grievance specialist, Joshua Wallen, "refused to process Plaintiff's grievances for pretextual reasons," in retaliation for the earlier suit. He also claims that Mr. Wallen violated his due process rights by failing to adequately investigate his complaints about the confiscation of his correspondence. In February 2023, Mr. Evans was transferred from ISP to New Castle. He claims he was moved in retaliation for the earlier suit. Based on these events, he sues Mr. Takacs, Ms. White, Mr. Wallen, and Warden Ron Neal for money damages.

Prisoners have an interest protected by the First Amendment in their incoming and outgoing mail. *Van den Bosch v. Raemisch*, 658 F.3d 778, 785–86 (7th Cir. 2011); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). In determining whether an inmate states a First Amendment claim based on the withholding of mail, the court must consider two factors. *Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006). "First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Id.* (citation omitted). Such interests include "security, order, and rehabilitation." *Id.* (citation omitted); *see also Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989). Second, the challenged action "must be no greater than is necessary or essential to the protection of that interest." *Koutnik*, 456 F.3d at 784 (citation and quotations omitted).

Giving Mr. Evans the inferences to which he is entitled at this stage, he has plausibly alleged a denial of his First Amendment rights in connection with the correspondence withheld in November 2022, December 2022, and January 2023. Further factual development may show that there were legitimate reasons for confiscating this

correspondence, but he has plausibly alleged that the confiscation of his correspondence went beyond what was necessary to protect the security of the facility. *See Lashbrook v. Hyatte*, 758 F. App'x 539, 542 (7th Cir. 2019) (observing that at the pleading stage, it is difficult to evaluate the prison's interests and the viability of alternatives). He will be permitted to proceed against Ms. White and Mr. Takacs on this claim.

He additionally claims that Mr. Wallen violated his right to procedural safeguards in connection with the confiscation of his mail. "Due process requires that the decision to censor inmate mail must be accompanied by minimum procedural safeguards." *Miller v. Downey*, 915 F.3d 460, 465–66 (7th Cir. 2019) (citations omitted). "This standard has generally required officials to provide inmates with notice and an opportunity to object to a confiscation of their mail." *Id.* A claim challenging the lack of adequate procedural protections in connection with the confiscation of mail is distinct from—and not duplicative of—a First Amendment claim challenging the confiscation of the mail itself. *Id.* He will be permitted to proceed against Mr. Wallen under *Miller*.

He also asserts First Amendment retaliation claims. To state a claim, he must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citation omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

4

He satisfies the first prong at this stage, because filing a lawsuit qualifies as "protected activity" for purposes of a retaliation claim. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). On the second prong, having correspondence confiscated, being blocked from contacting family members, or being transferred to a different prison could "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). Having grievances mishandled also can satisfy this standard if, as Mr. Evans contends, he was required to exhaust his administrative remedies before filing any lawsuit about the conditions of his confinement.[2] He claims Mr. Wallen was trying to thwart his ability to do so because he was angry about the prior suit. On the third prong, he alleges that Ms. White, Mr. Takacs, and Mr. Wallen were all aware of the earlier suit when they took these actions, and the incidents he describes occurred in close proximity to the proceedings in the prior case.[3] He will be permitted to proceed on a retaliation claim against these defendants.

As for the Warden, liability under 42 U.S.C. § 1983 is based on personal responsibility, and he cannot be held liable merely because of his supervisory position. *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). Supervisory officials can be held

---

[2] As a general matter, the mishandling of grievances does not give rise to a cognizable constitutional claim. *Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016) (the Constitution does not require that prisons provide a grievance procedure, and the existence of an internal grievance procedure does not create any constitutionally guaranteed rights). However, "[c]onduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive." *Holleman*, 951 F.3d at 878.

[3] Mr. Evans' earlier case was filed in March 2022 and all three of these individuals are defendants. Ms. White filed a notice of appearance in August 2022 and Mr. Takacs filed his in December 2022. Mr. Wallen was originally dismissed from the case, but in early 2023 the District Judge granted Mr. Evans' motion to reconsider and reinstated the claim against him.

5

liable for a constitutional violation only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Mr. Evans alleges that he complained to the Warden about his brother and father-in-law being blocked from his phone list, and the Warden allegedly responded that he had "approved" of these two individuals being blocked. This is sufficient to proceed further on a claim against the Warden. *Id.*

For these reasons, the court:

(1) GRANTS the plaintiff's motion to clarify (ECF 14) as outlined;

(2) GRANTS the plaintiff leave to proceed against Ms. White and Ms. Takacs in their personal capacity for monetary damages for allegedly confiscating his correspondence in November 2022, December 2022, and January 2023 without a valid security justification in violation of the First Amendment;

(3) GRANTS the plaintiff leave to proceed against Joshua Wallen in his personal capacity for monetary damages for allegedly denying him due process protections in connection with the confiscation of his correspondence;

(4) GRANTS the plaintiff leave to proceed against Ms. White, Ms. Takacs, and Mr. Wallen in their personal capacity for monetary damages for allegedly retaliating against him in violation of the First Amendment for filing a prior lawsuit;

(5) GRANTS the plaintiff leave to proceed against Warden Ron Neal in his personal capacity for monetary damages for allegedly approving of retaliatory conduct by his subordinates in violation of the First Amendment;

(6) DISMISSES all other claims;

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Joe Takacs, Brittany White, Joshua Wallen, and Warden Ron Neal at the Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 15) pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(9) ORDERS Joe Takacs, Brittany White, Joshua Wallen, and Warden Ron Neal to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

February 13, 2024

*s/ Damon R. Leichty*
Judge, United States District Court